IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-02358-REB-CBS

MIECZYSLAW BRONAKOWSKI,
        Plaintiff,
v.

BOULDER VALLEY SCHOOL DISTRICT,
        Defendant.
_____

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on the Motion for Summary Judgment

filed by Defendant Boulder Valley School District ("School District") on May 30, 2007

(doc. # 54).  Pursuant to the Order of Reference dated January 18, 2006 (doc. # 8) and

the memorandum dated June 21, 2007 (doc. # 62), the Motion was referred to the

Magistrate Judge.  The court has reviewed the Motion and Brief (docs. # 54 and # 55),

Mr. Bronakowski's Response (filed June 19, 2007) (doc. # 57), the School District's

Reply (filed July 5, 2007) (doc. # 63), the exhibits, the entire case file, and the

applicable law and is sufficiently advised in the premises.


I.      Statement of the Case

A.      Procedural Background

        Mr. Bronakowski filed this lawsuit in his *pro se* capacity on or about November

22, 2005.  (*See* doc. # 3).  Mr. Bronakowski filed his Amended Complaint on January 3,

2006, alleging discrimination based on his national origin, Polish, in violation of 42

U.S.C. § 2000e-5 (Title VII).  (*See* doc. # 5).  The School District filed a motion for

summary judgment and brief on November 22, 2006.  (*See* docs. # 38 and # 39).  Mr.

Bronakowski filed a response on December 4, 2006.  (*See* doc. # 40).

On December 7, 2006, *pro bono* counsel entered their appearance on Mr. Bronakowski's behalf.  At Mr. Bronakowski's request, the School District withdrew its motion for summary judgment and the court amended the Scheduling Order, extending the discovery and dispositive motions deadlines.  The School District then filed the instant Motion on May 30, 2007.  Through counsel, Mr. Bronakowski filed his Response to the Motion on June 19, 2007.  The School District filed its Reply on June 21, 2007.  Also on June 21, 2007, counsel for Mr. Bronakowski was permitted to withdraw, based upon irreconcilable differences.  (*See* docs. # 58 and # 61).

Mr. Bronakowski alleges a "primary claim" that the School District "maintain[ed] a work environment hostile to Mr. Bronakowski because of his national origin, Polish," in violation of Title VII.  (*See* Mr. Bronakowski's Response (doc. # 57) at pp. 1-2 of 9).  Mr. Bronakowski alleges a "secondary claim for discriminatory discharge."  (*See id.* at p. 2 of 9).


B.      Factual Record

Mr. Bronakowski was employed the School District as a bus driver from September 2001 to February 2004.  Mr. Bronakowski had numerous performance problems during the course of his employment.  In September 2002, Mr. Bronakowski's problems with managing the students on his school bus on the Platte Middle School route resulted in complaints from parents and teachers.  (*See, e.g.,* School District's Exhibits A-1 (doc. # 55-2) at p. 1 of 10;  A-3 (doc. # 55-4) at p. 2 of 9; Mr. Bronakowski's Exhibit D (doc. # 57-5) at p. 20 of 31).  In response to these complaints, Dennis Lewis, Boulder Transportation Terminal Supervisor, observed Mr. Bronakowski on the job and scheduled a ride check, during which a staff trainer rode with Mr. Bronakowski to document his performance.  (*See* Exhibit D (doc. # 57-5) at p. 20 of 31).  As a result of a meeting between Mr. Lewis and Mr. Bronakowski on September 24,

2002,  Mr. Bronakowski was transferred to a special education bus route for Emerald Elementary School that carried less than five students in a smaller vehicle, a Chevrolet Suburban.  (*See* Exhibits A-1 (doc. # 55-2) at p. 1 of 10;  A-3 (doc. # 55-4) at p. 2 of 9; Exhibit D (doc. # 57-5) at p. 20 of 31).

Later in 2002, the School District was advised of further problems with Mr. Bronakowski's behavior on the job.  On October 2, 2002, while students were on board, the Suburban driven by Mr. Bronakowski was observed stopped on the railroad tracks at a red light at Hwy. 119.  (*See* Exhibit A-1 (doc. # 55-2) at p. 2 of 10).  Mr. Bronakowski was observed on many occasions playing with special education students by lifting them over his head or swinging them around.  (*See, e.g.,* Exhibits A-1 (doc. # 55-2) at pp. 1, 2 of 10;  A-3 (doc. # 55-4) at pp. 3-4 of 9; Exhibit D (doc. # 57-5) at p. 20 of 31).  Mr. Bronakowski concedes that he "was carrying children on my shoulders, and I was lifting them in my hands . . . I was taking kids to the lawn, and I was putting them on my knees and playing with them as a carousel."  (Exhibits A-8 (doc. # 55-9) at p. 2 of 2).  The principal of Emerald Elementary School complained that one child's behavior in the classroom became disruptive after Mr. Bronakowski engaged in this type of play with him.  (*See* Exhibits A-1 (doc. # 55-2) at p. 2 of 10;  A-3 (doc. # 55-4) at p. 4 of 9; Exhibit D (doc. # 57-5) at p. 20 of 31).  The principal also complained that Mr. Bronakowski was arriving at the school early in the afternoon, going to the child's classroom, and disrupting the class.  On one occasion the teachers locked the door of the classroom to prevent Mr. Bronakowski from disrupting the class.  (*See* Exhibits A-1 (doc. # 55-2) at p. 2 of 10;  A-3 (doc. # 55-4) at p. 4 of 9; Exhibit D (doc. # 57-5) at p. 20 of 31).

After meeting with Robert Young, Director of Transportation and Mr. Lewis on December 19 and 20, 2002, Mr. Bronakowski was instructed not to go to the classroom and not to have physical interaction with the child.  (*See* Exhibits A-1 (doc. # 55-2) at p.

2 of 10;  Exhibit D (doc. # 57-5) at p. 20 of 31).  Mr. Bronakowski responded that while some people may not like his style of interaction with the children, he would continue to interact with students as he wished.  (*See* Exhibits A-1 (doc. # 55-2) at p. 2 of 10;  A-3 (doc. # 55-4) at p. 4 of 9; Exhibit D (doc. # 57-5) at p. 20 of 31).

In February 2003, the School District received further complaints from Creekside Elementary School about Mr. Bronakowski taking children out of their car seats and playing with them on the front lawn.  (*See* Exhibits A-1 (doc. # 55-2) at pp. 2, 3 of 9; A-3 (doc. # 55-4) at p. 4 of 9;  Exhibit D (doc. # 57-5) at p. 21 of 31).  One child ran away from Mr. Bronakowski and "into the driveway in front of the bus while a car was passing and was almost hit."  (Exhibit A-9 (doc. # 55-10).  A teacher requested several times that Mr. Bronakowski leave the students on the bus until the teachers meet them in the morning.  (*See* Exhibit A-9 (doc. # 55-10)).  Mr. Lewis received an e-mail on February 21, 2003 from a teacher that described Mr. Bronakowski's inappropriate behavior with young special education students and his angry reaction to the teacher who reported his behavior.  (*See* Exhibits A-1 (doc. # 55-2) at p. 3 of 9; A-9 (doc. # 55-10);  Exhibit D (doc. # 57-5) at p. 21 of 31).

Based on these complaints, Mr. Lewis met with Mr. Bronakowski and his union representative, Stewart Machle, on February 25, 2003.  Mr. Bronakowski received a written reprimand.  (*See* Exhibits A-1 (doc. # 55-2) at p. 3 of 9; A-10 (doc. # 55-11); Exhibit D (doc. # 57-5) at p. 21 of 31).  Mr. Bronakowski responded that he knew better than the teacher how to interact properly with the children.  (Exhibit D (doc. # 57-5) at p. 21 of 31).

In 2003, Mr. Bronakowski committed several traffic violations while transporting school children.  On March 14, 2003, Mr. Bronakowski received a photo radar ticket for driving a school vehicle through a red light at the intersection of 28th Street and Arapahoe.  (*See* Exhibit A-11 (doc. # 55-12)).  On April 9, 2003, he received a

speeding ticket while driving a school vehicle 36 mph in a 20 mph school zone at Midway Boulevard and Kohl Street in Broomfield, Colorado.  (*See* Exhibit A-12 (doc. # 55-13)).  On August 25, 2003, Mr. Bronakowski was ticketed for causing a 3-car accident while transporting special education students.  (*See* Exhibits A-13 (doc. # 55-14); A-1 (doc. # 55-2) at p. 4 of 10).  The School District's Accident Research Team ("ART") determined that Mr. Bronakowski could have avoided the accident if he had not been following too closely behind another vehicle.  (*See* Exhibits A-13 (doc. # 55-14) at p.2 of 6; A-14 (doc. # 55-15)).  Mr. Bronakowski maintained that he could not have avoided the accident.  (*See* Exhibit A-14 (doc. # 55-15)).  Mr. Bronakowski received a written reprimand for the accident and a warning that any further "at fault accidents and/or violations of Boulder Valley School District Policies and Procedures may result in additional disciplinary action up to and including dismissal." (Exhibit A-15 (doc. # 55-16)).

Also in 2003, the School District received several separate complaints about Mr. Bronakowski's performance.  On April 2, 2003, the Transportation Department received a staff complaint regarding Mr. Bronakowski's continued failure to prepare required Medicaid paperwork.  (*See* Exhibit A-1 (doc. # 55-2) at p. 3 of 10).  On June 4, 2003, the Transportation Department received a complaint from a City of Boulder employee who observed Mr. Bronakowski run a red light at the intersection of 28th Street and Arapahoe and cause other traffic to stop suddenly to avoid "a major accident."  (*See* Exhibit A-1 (doc. # 55-2) at p. 3 of 10).  On October 6, 2003, the Transportation Department received a complaint from a trainer who observed Mr. Bronakowski speeding and driving on the wrong side of the road while leaving the parking lot of the Boulder Terminal.  (*See* Exhibit A-1 (doc. # 55-2) at p. 4 of 10).  When the trainer confronted him about this driving behavior, Mr. Bronakowski maintained that he had done nothing wrong.  (*See id.*).  Also in October 2003, the Transportation Department

learned of complaints about Mr. Bronakowski parking in an unsafe manner and his belligerent behavior.  (*See* Exhibit A-1 (doc. # 55-2) at p. 4 of 10)

Based upon all of these problems with his job performance, Mr. Bronakowski was placed on an "Action Plan for Growth" ("Plan") on October 30, 2003.  (*See* Exhibits A-2 (doc. # 55-3), A-3 (doc. # 55-4) at p. 5 of 9; A-5 (doc. # 55-6) at p. 3 of 3; A-6 (doc. # 55-7)).  The Plan "stat[ed] to the employee what they need to do in order to perform their job to the expectations that we have for the job."  (School District Exhibit A-5 (doc. # 55-6) at p. 3 of 3).  The School District informed Mr. Bronakowski of its concerns about his driving violations, his failure to prepare required paperwork, and his argumentative attitude with coworkers and superiors.  The School District gave Mr. Bronakowski several goals to achieve by January 30, 2004 in order to improve his job performance: (1) "follow all traffic laws and comply with law enforcement officials at all times;" (2) "follow all applicable rules and guidelines for operating a district vehicle" and "attend training sessions that are part of your continuing instruction;" (3) "conduct yourself in a professional manner at all times in your relationships with co-workers, employees throughout the District, and with parents and students;" and (4) "initiate monthly meetings with [Mr. Lewis] for the purpose of monitoring and adjusting the progress toward the goals of the growth plan and conferring and coaching, as needed to meet goals."  (School District Exhibit A-6 (doc. # 55-7) at p. 2 of 2).  The Plan provided that Mr. Lewis would personally observe Mr. Bronakowski "four times formally and as many times informally as is needed in the school year."  (School District Exhibit A-6 (doc. # 55-7) at p. 2 of 2).  The Plan expressly stated that "[f]ailure to consistently demonstrate satisfactory levels of improvement may lead to dismissal."   (School District Exhibit A-6 (doc. # 55-7) at p. 2 of 2).

Mr. Bronakowski did not demonstrate satisfactory levels of improvement in accordance with the Plan.  As part of the Plan, two trainers rode with Mr. Bronakowski

in November 2003 to observe his performance.  Both trainers documented numerous deficiencies in his performance, including driving 33 to 35 mph in a posted 25 mph zone, mishandling "the harness for some kids," inadequate knowledge of the route, failure to utilize the parking brake, and lack of cooperation.  (*See* School District Exhibits A-18 (doc. # 55-19); A-23 (doc. # 55-24)).  Mr. Bronakowski did not initiate monthly meetings with Mr. Lewis, as required by the Plan.  (*See* School District Exhibit A-7 (doc. # 55-6) at p. 3 of 3).

On November 17, 2003, Mr. Lewis and Mr. Young met with Mr. Bronakowski to discuss an apparent false entry on his timesheet.  (*See* School District Exhibit A-21 (doc. # 55-22)).  Mr. Bronakowski acknowledged that the entry was false.  (*See* School District Exhibit A-3 (doc. # 55-4) at p. 8 of 9).  Bronakowski received a written reprimand for falsifying time records and a warning that any further "violations of School Board Policy, Laws, Regulations, or BVSD Procedures may result in further disciplinary action up to and including termination."  (Exhibit A-22 (doc. # 55-23)).

In January 2004, a teacher reported observing Mr. Bronakowski get out of his school vehicle at an intersection to ask her for directions.  With students inside, the vehicle rolled backward and Mr. Bronakowski had to run back and jump inside to stop it.  (*See* Exhibit A-1 (doc. # 55-2) at p. 6 of 10).  During a meeting held on January 22, 2004 to discuss this incident, Mr. Bronakowski admitted that the vehicle had rolled backward while he was outside of it.  (*See* Exhibit A-24 (doc. # 55-25) at p. 1 of 2).

Mr. Lewis and Mr. Young met with Mr. Bronakowski on January 30, 2004 to review his lack of compliance with the Plan.  On February 2, 2004, the School District suspended Mr. Bronakowski without pay for 10 working days, from February 3 to February 18, 2004, pending a final determination regarding his employment with the School District.  (*See* School District Exhibit A-25 (doc. # 55-26)).  At a meeting on February 10, 2004, the School District informed Mr. Bronakowski of its recommendation

to terminate his employment, effective February 24, 2004.  (*See* School District Exhibits

A-3 (doc. # 55-4) at pp. 8-9 of 9; A-28 (doc. # 55-29)).

Mr. Bronakowski filed a charge of discrimination with the EEOC on or about

November 17, 2004.  (*See* School District Exhibit A-30 (doc. # 63-2) (EEOC Intake

Questionnaire)).  The EEOC dismissed the charge and issued a right-to-sue letter on

August 22, 2005.  (*See* original Complaint (doc. # 3) at p. 7 of 9).  Mr. Bronakowski

initiated this lawsuit on or about November 21, 2005.  (*See id.*).


II.    Standard of Review

> Summary judgment is proper when there is no genuine issue as to
> any material fact and the movant is entitled to judgment as a matter of
> law.  A dispute is "genuine" if the issue could be resolved in favor of either
> party.  A fact is "material" if it might reasonably affect the outcome of the
> case.
> A movant who does not have the burden of proof at trial must show
> the absence of a genuine fact issue.  By contrast, a movant who bears the
> burden of proof must submit evidence to establish every essential
> element of its claim or affirmative defense.  In either case, once the
> motion has been properly supported, the burden shifts to the nonmovant
> to show, by tendering depositions, affidavits, and other competent
> evidence, that summary judgment is not proper.  All the evidence must be
> viewed in the light most favorable to the party opposing the motion.
> However, conclusory statements and testimony based merely on
> conjecture or subjective belief are not competent summary judgment
> evidence.

*Wausau Business Ins. Co. v. U.S. Motels Management, Inc.*, 341 F. Supp. 2d 1180,

1182-83 (D. Colo. 2004) (citations omitted).


III.   Analysis

A.    Mr. Bronakowski's "Primary" Claim of Hostile Work Environment

"Title VII forbids employment discrimination on the basis of race or national

origin." *Herrera v. Lufkin Industries, Inc.*, 474 F.3d 675, 680 (10th Cir. 2007) (internal

quotation marks and citation omitted).  "This includes an employee's claims of a hostile

work environment based on race or national origin discrimination."  *Id.* at 680.  "To

survive summary judgment on a claim alleging a racially hostile work environment, [Mr. Bronakowski] must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, and that the victim was targeted for harassment because of [his] . . . race[ ] or national origin." *Herrera*, 474 F.3d at 680 (internal quotation marks and citations omitted).

1.      Failure to Establish Hostile Work Environment Claim

        Mr. Bronakowski alleges that "other employees . . . harassed me because of my national origin, Polish, and because Polish is my first language."  (Exhibit B (doc. # 57-3) at p. 2 of 16 ¶ 9).  "A plaintiff does not make a showing of a pervasively hostile work environment by demonstrating a few isolated incidents of racial enmity or sporadic racial slurs.  Instead, there must be a steady barrage of opprobrious racial comments." *Herrera*, 474 F.3d at 680 (internal quotation marks and citations omitted).  "In making this determination, we consider the work atmosphere both objectively and subjectively, . . . look[ing] at all the circumstances from the perspective of a reasonable person in the plaintiff's position." *Herrera*, 474 F.3d at 680 (internal quotation marks and citation omitted).  "The question on summary judgment, then, is whether a jury, in view of all of the evidence, could reasonably conclude the discriminatory harassment to be sufficiently severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment, and that the victim subjectively perceived the environment to be abusive." *Montes v. Vail Clinic, Inc.*, — F.3d —, 2007 WL 2309766 (10th Cir. (Colo.) Aug. 14, 2007) (internal quotation marks and citations omitted).

        Mr. Bronakowski alleges that "Donna Gallegos, a co-worker, made my reputation

suffer and got me in trouble for things I did not do wrong," that "Nona (a bus driver, last name unknown) and Peggy (a dispatcher, last name unknown) complained about me to the teachers at Creekside," and that the "director of Creekside threw me out of her office, and teachers there sent letters complaining about me."  (Exhibit B (doc. # 57-3) at p. 2 of 16 ¶¶ 10, 11).  Mr. Bronakowski alleges that "Karen, the driving instructor," falsely criticized his driving and that "[a]nother woman, by the name of Tabaka, yelled at me for no valid reason . . . ."  (Exhibit A-7 (doc. # 55-8) at p. 1 of 2 ¶¶ 10, 11).  He has not alleged or shown that any of these actions were based upon discrimination.

Mr. Bronakowski alleges that an unidentified "co-worker addressed me with the ethnic slur: 'polish pig' while another called me 'idiot' [sic]."  (Exhibit A-7 (doc. # 55-8) at p. 1 of 2 ¶ 8).  Mr. Bronakowski does not allege or show who made these statements or where or when.  Mr. Bronakowski alleges that "[a]nother co-worker, Donna Drake, said to me, don't speak Polish, Polish pig, in my face."  (Exhibit B (doc. # 57-3) at p. 2 of 16 ¶ 13).  Mr. Bronakowski does not allege or show when or where this statement was made.  Mr. Bronakowski makes the conclusory allegation that "Rudy, a co-worker of mine, attributed stupidity and ignorance to Poles . . . ."  He has not alleged any statements made by "Rudy" or the dates of any statements.

Mr. Bronakowski alleges that Mr. Young said that he "did not need any equipment to remove ice from car windows and I could scrape them with my fingernails – like all 'Poles.'"  (Exhibit B (doc. # 57-3) at p. 2 of 16 ¶ 13;  Exhibit A-7 (doc. # 55-8) at p. 1 of 2 ¶ 8)).  He alleges that Mr. Lewis joked "that I could now add to my education the know-how of plugging and unplugging electrical conduits . . . ."  (Exhibit A-7 (doc. # 55-8) at p. 1 of 2 ¶ 9); *see also* Exhibit B (doc. # 57-3) at p. 2 of 16 ¶ 15).  Mr. Bronakowski has not alleged the dates of these statements.

Facing a summary judgment motion, Mr. Bronakowski must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and that he was targeted for harassment because of his national origin. *Herrera*, 474 F.3d at 680 (internal quotation marks and citations omitted).  Much of the conduct alleged by Mr. Bronakowski evidence does not indicate discrimination based on his national origin.  Title VII cannot insulate Mr. Bronakowski from any and all criticism of his job performance.  (*See Trujillo v. University of Colorado Health Sciences Center*, 157 F.3d 1211, 1214 (10th Cir. 1998) ("monitoring" and "normal job stress" do not "constitute a hostile or abusive work environment").  Mr. Bronakowski's evidence does not show that his working conditions were inflicted upon him because of animus to his national origin.  The remainder of Mr. Bronakowski's evidence is not sufficiently specific to create a basis on which a reasonable jury might find a hostile working environment.  Mr. Bronakowski has not identified the speakers of some of the alleged comments.  Without alleging any specific dates, Mr. Bronakowski has identified only a few comments during the two and a half years that he worked for the School District.  There is no evidence in the record that Mr. Bronakowski ever complained to anyone about a hostile work environment based on his national origin.  Mr. Bronakowski's allegations and evidence are not sufficient to support a finding of pervasive hostility in his work environment based upon his national origin.  The School District is entitled to summary judgment on Mr. Bronakowski's claim for hostile work environment.

2.      Hostile Work Environment Claim Not Timely Filed

Further, Mr. Bronakowski's hostile work environment claim was untimely filed. Title VII requires that a plaintiff file a charge with the Equal Employment Opportunity Commission (EEOC) either 180 or 300 days "after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1).  "Each discrete act of discrimination . . .

is treated separately, and each must be the subject of a timely EEOC charge in order to exhaust administrative remedies, even though each discrete act might also be part of a larger pattern or practice of discrimination . . . ." *Carrero v. Arapahoe County Sheriffs Office*, 2006 WL 2594472 at * 3 (D. Colo. Sept. 11, 2006) (citing *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). "The sole exception to this rule is a hostile environment claim; so long as one act that is part of the hostile environment is timely, the entirety of the hostile environment claim is timely." *Carrero,* 2006 WL 2594472 at * 3 (citing *Morgan*, 536 U.S. at 116-17 ("Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.")).

"The contents of the EEOC charge define the contours of any subsequent lawsuit that may be brought." *Carrero,* 2006 WL 2594472 at * 3. Mr. Bronakowski did not raise his hostile work environment claim in his EEOC charge. (*See* Exhibit A-33 (doc. # 63-5)). Mr. Bronakowski stated in his EEOC charge that the discrimination took place on a single date, November 24, 2004, the date that his termination was effective. (*See* Exhibits A-33 (doc. # 63-5); A-28 (doc. # 55-29)). There is no mention in the record of a hostile work environment claim until the filing of Mr. Bronakowski's Response on June 19, 2007. (*See* doc. # 57). Mr. Bronakowski has not submitted evidence of when the alleged acts creating a hostile work environment occurred. As no "act contributing to the claim" of hostile work environment was alleged or demonstrated to have occurred within the filing period, the claim is untimely. For this reason also, the School District is entitled to summary judgment on Mr. Bronakowski's claim for hostile work environment.

B.    Mr. Bronakowski's "Secondary" Claim of "Discriminatory Discharge"

"In analyzing whether plaintiff has made out a viable claim of . . . national origin discrimination pursuant to Title VII," the court employs "the familiar burden-shifting analysis of *McDonnell Douglas Corp. v. Green*." *Talmadge v. Hospital Shared Services, Inc.*, 2007 WL 1125661 * 2 (D. Colo. 2007) (citation omitted).  To establish a prima facie case of discriminatory termination in violation of Title VII, a plaintiff "need only show that: (1) he belongs to a protected class; (2) he was qualified for his job; (3) despite his qualifications, he was discharged; and (4) the job was not eliminated after his discharge."  *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000) (citation omitted).  "If plaintiff satisfies the burden of establishing a prima facie case of discrimination, the burden then shifts to defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. If defendant meets this burden, plaintiff then must prove the ultimate fact of discrimination by showing that defendant's proffered reason is pretextual."  *Talmadge*, 2007 WL 1125661 at * 2 (citations omitted).

The School District moves for summary judgment on Mr. Bronakowski's claim for discriminatory termination on the grounds that: (1) he cannot show the fourth element of a prima facie case, that the School District treated him less favorably than others outside the protected class; (2) the School District had legitimate, non-discriminatory reasons for terminating his employment; and (3) he has not demonstrated that the School District's proffered reasons for terminating his employment were a pretext for discrimination.

1.      Prima Facie Case

As to the School District's first argument, the Tenth Circuit held in *Kendrick* that the lower court committed error "in requiring [plaintiff] to show that [the employer] treated similarly-situated nonminority employees differently in order to [establish a

prima facie case]." 220 F.3d at 1229. *See also English v. Colo. Dept. of Corrections*, 248 F.3d 1002, 1008 (10th Cir. 2001) ("[I]n disciplinary discharge cases . . . a plaintiff does not have to show differential treatment of persons outside the protected class to meet the initial prima facie burden under *McDonnell Douglas*."). Thus, Mr. Bronakowski need not show he was treated less favorably than a person outside the protected group to satisfy the fourth prong of his prima facie case.

2.      Legitimate, Non-Discriminatory Reasons for Termination of Employment

The School District has articulated numerous legitimate, nondiscriminatory reasons for its decision to terminate Mr. Bronakowski's employment.

Mr. Bronakowski had many performance problems during his employment, including several traffic violations that endangered the safety of children riding in the school vehicles. Mr. Bronakowski admitted playing with children in a manner that the School District considered unsafe and inappropriate. (Exhibits A-8 (doc. # 55-9) at p. 2 of 2). While the School District afforded Mr. Bronakowski more than ample opportunity to improve his job performance, Mr. Bronakowski did not demonstrate adequate improvement. Mr. Bronakowski continuously argued with attempts to correct his behavior. He refused to accept direction from coworkers or superiors and repeatedly denied responsibility for his own actions. (*See, e.g.,* School District Exhibits A-1 (doc. # 55-2) at pp. 2-5 of 10). Mr. Bronakowski denied responsibility for an accident that he caused, indicating that "he had determined that it was okay to go through the red light, but the other person stopped . . . at the red light." (*See* School District Exhibit A-29 (doc. # 55-30) at p. 2 of 2). The record is replete with legitimate, non-discriminatory justifications for the School District's decision to terminate Mr. Bronakowski's employment based on "not meeting the expectations of your growth plan, incompetence, efficiency, insubordination, and discourteous language or actions

toward others." (School District Exhibit A-25).

3.     Lack of Evidence of Pretext

Mr. Bronakowski alleges the School District discriminated against him by not allowing him to speak Polish at work, giving him no warnings of his termination, providing false reasons for his termination, supervising him more than other employees, being polite to other employees and impolite to him, and because other employees made derogatory remarks to him. (*See* Amended Complaint (doc. # 5) at p. 2 of 20). Mr. Bronakowski's allegations of discriminatory discharge are not supported by the evidence.

The evidence directly contradicts Mr. Bronakowski's allegation that he did not receive warnings or opportunities to correct his behavior. Mr. Bronakowski was directed several times to correct his driving behavior and repeatedly warned not to "horseplay" with students. Mr. Bronakowski received numerous warnings and opportunities to correct his performance. (*See* Exhibits A-10 (doc. # 55-11); A-14 (doc. # 55-15); A-15 (doc. # 55-16); A-6 (doc. # 55-7); A-22 (doc. # 55-23); Exhibit D (doc. # 57-5) at p. 21 of 31 (after Mr. Bronakowski received a speeding ticket, Mr. Lewis directed him to drive with greater caution and obey all traffic laws)).

Mr. Bronakowski has not rebutted the School District's legitimate concerns for the safety of students on its school busses. (*See, e.g.*, Exhibit A-9 (doc. # 55-10) at p. 1 of 2 ("Due to the intensive disability of the children in my classroom I am very cautious about the safety issue of the transition from the bus/car to the school")). While Mr. Bronakowski alleges that other employees were involved in accidents while driving school vehicles (*see* Exhibit D (doc. # 57-5) at pp. 10-13 of 16), there is no evidence before the court of the seriousness of the other accidents or who was at fault in those accidents. (*See* Exhibit C (doc. # 57-4) at p. 2 of 4). Mr. Bronakowski has not

identified any similarly situated employee who was disciplined differently for driving conduct of comparable seriousness. One of Mr. Bronakowski's performance problems was his argumentative attitude with coworkers and superiors. Mr. Bronakowski has presented no evidence that other employees displayed an argumentative attitude to their supervisors.

Mr. Bronakowski alleges "[m]y salary was reduced (cut) three times without any explanation or justification." (*See* School District Exhibit A-7 (doc. # 55-8) at ¶ 1; *see also* Exhibit B (doc. # 57-3) at p. 2 of 16 ¶ 26). The evidence shows that Mr. Bronakowski's salary never deviated from the amount set by a collective bargaining agreement with the Boulder Valley Service Employees Association. (*See* School District Exhibit A-5 (doc. # 55-6) at p. 2 of 3). Mr. Bronakowski has not presented any evidence of the dates or amounts of the alleged salary changes.

Mr. Bronakowski alleges that '[w]hen I applied for Mountain Roads Training, I was turned down." (*See* School District Exhibit A-7 (doc. # 55-8) at ¶ 3). There is no evidence in the record of Mr. Bronakowski applying for Mountain Roads Training. He was denied a bid on a mountain route because he did not have the training and had previously been unable to manage the large school bus that was used on the mountain route. (*See* School District Exhibits A-3 (doc. # 55-4) at pp. 2, 5 of 9; Exhibit C (doc. # 57-4) at p. 2 of 4).

Mr. Bronakowski alleges "I was not allowed to accompany the children from the bus to their school, while other individuals were allowed to do so." (*See* School District Exhibit A-7 (doc. # 55-8) at ¶ 6). The record demonstrates that Mr. Bronakowski was specifically directed not to accompany the children from the bus to their school due to his inappropriate behavior with them. (Exhibit A-10 (doc. # 55-11) (instructing Mr. Bronakowski "to keep the students in the bus until they are received by teachers at the school or other designated employees. Also you are restricted from walking into a

16

school to meet, seek out, confront, or discuss with faculty, staff, or administration any matter concerning a student unless accompanied by a supervisor or designee . . .)." There is no evidence that any other bus drivers were playing inappropriately with children or entering and disturbing classrooms.

Mr. Bronakowski states that "students who rode my bus liked having me as their bus driver" and that parents "of the children who rode my bus commended me for my excellent performance." (Exhibit B (doc. # 57-3) at p. 1 of 16). Two of the letters cited by Mr. Bronakowski were written after Mr. Bronakowski had been suspended and/or terminated. (*See* Exhibit B (doc. # 57-3) at pp. 12, 13 of 16). One of the letters consisted of stickers from some children. (*See* Exhibit B (doc. # 57-3) at pp. 9 of 16). These letters do not address or refute the School District's articulated reasons for terminating Mr. Bronakowski's employment.

Mr. Bronakowski's own evidence contradicts his allegation that Mr. Lewis prohibited him from speaking Polish at work. While Mr. Bronakowski cites Exhibit 6 to his Affidavit (*see* doc. # 57-3 at p. 14 of 16), that Exhibit does not support his allegation that he was forbidden to speak Polish at work. Nor has Mr. Bronakowski alleged or shown the date of any such prohibition. Mr. Bronakowski's non-specific allegation of a prohibition on speaking Polish at work is not sufficient to rebut the School District's many reasons for his termination.

While Mr. Bronakowski alleges that he was treated impolitely by the School District while others were not, he has not presented any evidence to support this allegation. He has not shown who was treated more politely or that he was treated impolitely because of his national origin. He has not alleged or proved that Dr. Garcia did not meet with him due to his national origin. (*See* Exhibit A-7 (doc. # 55-8) at p. 2 of 2 ¶ 12).

In sum, Mr. Bronakowski has failed to carry his burden of presenting evidence

that the School District's numerous articulated reasons for terminating his employment were a pretext for discrimination based on his national origin.  The School District is entitled to summary judgment on Mr. Bronakowski's claim for discriminatory discharge.

Accordingly, **IT IS RECOMMENDED** that Defendant Boulder Valley School District's Motion for Summary Judgment (filed May 30, 2007) (doc. # 54) be GRANTED and judgment on the Amended Complaint (doc. # 5) enter in favor of Defendant Boulder Valley School District and against Plaintiff, with each party to pay his or its own costs and attorney fees.

Further, **IT IS ORDERED** that the Final Pretrial Conference set on Friday, September 28, 2007 at 9:15 a.m. is VACATED, to be reset by the court at a later date if necessary.

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).

The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is made.  28 U.S.C. § 636(b)(1).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  *See In re Griego*, 64 F.3d at 583;  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  The district

judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1).

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *One Parcel of Real Property*, 73 F.3d at 1060. Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (district court's decision to review a magistrate's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 10th day of September, 2006.

BY THE COURT:

___s/Craig B. Shaffer_____
United States Magistrate Judge